Good morning, may it please the Court. Adam Carter with the Employment Law Group on behalf of General Harwood. Let's start with the 4311 claim. We brought this appeal to correct a mistake that the District Court made by dismissing, at a motion to dismiss stage, the discrimination claim, the 4311 claim. The disparate treatment is clearly alleged in paragraph 3 of the complaint. The difference between, and this was a key admission in the case, had General Harwood not been on military leave at all, he's a pilot at American Airlines, and he gets AFIB, and his doctor says, you know, you can't fly now, or the FAA says you can't fly now, he doesn't get terminated or whatever, he goes on sick leave. But for those facts, the difference between that and his military service is just that, his military service. So that disparate treatment is what we should be able to show and what we allege, and that's in paragraph 3 right up front. So, respectfully, I think that the District Court, it wasn't Judge O'Grady, a different judge, dismissed out that part of the complaint, and we should have been able to get discovery. It's important for this reason, and that is, had we been able to show discrimination, had we been able to get discovery about discrimination, about, for example, how do you treat military versus how do you treat non-military? How do you treat baggage handlers? How do you treat, you know, if we had gotten... So, the immense rare for some kind of discrimination because of service, it seems to me, is really counterindicated by that. The fly in the ointment comes from the fact that AFIB condition comes up, and you can't fly without a waiver. And so, what happens thereafter, and you make a pretty persuasive case of what happens thereafter in terms of maybe it wasn't addressed promptly, he didn't get his job back promptly, but the notion that there was discrimination because of the status and the service, as opposed to his AFIB, is just totally, it's not part of the complaint. I don't, I understand your argument about the court may have applied, not applied the full scope of the statute, but I'm not sure it makes any difference in this case. Well, if I may, Your Honor, the difference is we did plead it. It's in paragraph three. In this case, is that he was rehired at first, and then he could not become a pilot because, until he had a waiver. Your Honor, it's not quite right about that, if I may. And that is, he was, everyone set September 1 as the date because he was coming off of orders August 31. Well, that's when he said he was coming back. And if I may, Your Honor, the only point, though, is he was not then reemployed. He was told before the September 1 date, if you don't have the medical, you're not coming back. So, everybody knew that he was not being reemployed. When did the medical come up? I thought it came up on August. It came up a few days before he was scheduled to arrive. A few days is, there was a lot happening in that time frame, but my recollection of the record is it was August 20, and again. Yeah, that's right, August 20, that's 10 days, 11 days before, yeah. Okay, so. And that came up, but before then, he was scheduled to appear on September 1. They said, you're hired, you've got the new job, you're a pilot in the New York, LaGuardia, whatever it was. He was always a pilot. The escalator position was to go from. No, but that's not an issue. The question is, they rehired him. They said there was no barrier, there was no mens rea saying you can't come back because you're in the service. They basically said, you're come back, your request is granted. The fly in the ointment arose when they received notice on August 20. And I believe that. That he had AFIB, and also now he can't be a pilot, so now they have to decide what to do. Now, I believe that I'm entitled to show that they have a different thought process, and that the different thought process is, had he, and I show by the disparate treatment, that had he been, and we have this in the record, if he was just a pilot without any military service, gets AFIB, he is still paid. He is still able to access all this sick leave that he has. He earned it. It's his money. Why can't he access it? Let me move on now to the other issues. You have much better arguments to make. I want to move on to those. The reason why, and if I may, the reason why 4311 is important is because then, if I can get the discovery that I need to show this disparate treatment and to show the thinking of the employer, well then, I can better prove willfulness. And the liquidated damages is the, USERA has many great qualities. One of its not so great qualities for employment lawyers like me is that it does not have a great damages structure. So what does it have? It has liquidated damages on your economics, which is a doubling, and for willfulness, and I should be able to show reckless disregard. I should be able to show those things, and I believe that I did. This case is on all fours with Mace. Let's focus again on 4311. Yes, sir. If you prevail on your position regarding discrimination law, dovetailing with Judge Niemeyer has gone with it. We are somewhat constrained with big law. Discovery, my understanding, you've got to make allegations that will allow you to go there, and most consistently, you allege that American failed to re-employ him because he did not possess a valid first-class medical certificate or an FAA waiver. So even when you go to Bradbury, the case that you rely upon quite a bit, it indicates pretty clearly not all motivations factually related to a service will be sufficient. And so when you get there, you slide into the 12B6 question of whether even under this high standard here, that's sufficient. So in other words, you could win on the discrimination and steal. It appears, though, from the factual allegations here that you've made an eight-ball standard, that that's not sufficient to be able to allege a discrimination claim. Well, I think it's enough under eight-ball to allege disparate treatment, and I've done that in paragraph three. I've also done it later on in the complaint. Let me get to that. Well, the factual basis relies upon the fact that he did not possess a first-class medical certificate or a FAA waiver. That's the reason. Then to be able to show some degree of willfulness, I mean, that's kind of difficult to do in that kind of light. And again, my only job at the complaint stage is to allege it, and I allege it in paragraph three that he … But it's the nexus between the middle-teller military service and the reason here if it's FAA certification or waiver. That doesn't seem to indicate they are joining with that nexus. And, Your Honor, had the FAA said you can't fly because of your medical condition while he was there, he would just go on sick leave. But because of his military service, he is kept out in the cold, and that is the difference. That is the disparate treatment that I allege and that I should be able to prove, and that is the nexus to the military service. If I may move on to equitable relief, that's the other big thing that the court has. The district court has equitable relief at its disposal. The statute mentions it twice, and here we were just … Which statute are you talking about? USERA. USERA mentioned … It's the remedy section. I want to say 4323 if my memory serves. But the point of this is we were just wanting to have the court tell American Airlines employees that they have to comply with USERA and that there's been this order. And that a person who believes that USERA has been violated wouldn't have to do research, go to Westlaw and look up the Harwood case and learn of what had happened. We didn't think that that was something that was too much to ask or, for example, to have training because this had been a policy, a 17-year policy that the employer had. So for all of those reasons … And then I want to just point out one last thing on the mitigation of damages, and then I'll reserve my time. I didn't put this in my brief, but subsequent research shows that with respect to the mitigation, remember what's happening on that. He's told you can't come back, and then he's got time from the Air Force that he's already earned over in Saudi Arabia. So he burns some of that leave, and the judge counts that as mitigating. We concede that some of that is mitigation, but some of it is not. And I point your honor to your Fourth Circuit decision in a case called Lilly v. City of Beckley, 797F2-191. It's a 1986 Title VII case, and that said that when you have moonlighting, when you have a second job, that is not counted as mitigation. If I may reserve the rest of my time. Yes, of course. Mr. Metlitsky. Thank you, your honor. Thank you, your honor. Anton Metlitsky for American Airlines. May it please the court. I'd like to start, if I could, with our main cross-appeal issue, because I think that issue resolves all the other issues in this case. The district court granted the plaintiff's summary judgment because it believed that Section 4312 requires a returning service member to be reemployed immediately and to no particular position. But that reading is flatly inconsistent with the statute. The statute uses the word promptly, right? It does. And the regulation says promptly should usually be within about two weeks. That's right, except in unusual circumstances. But if that's the question in the case, whether it was promptly... Well, I don't know if that's the question, but I'm just trying to get you on the language of the statute when you're making your argument. I absolutely agree with you. So that was the next thing I was going to say is the reason the district court was incorrect that General Harwood or any returning service member has to be reemployed immediately and to no particular position is because the statute says that the returning service member, so long as he satisfies the conditions of 4312, which is true here... Shortly before he comes in on September 1st, on August 20th, this APIV arises, which means he can't be a pilot. The question then is why from August 20th until two weeks thereafter, why couldn't they find another position for him that would accommodate a former pilot who had APIV? You did that on October 22, maybe. But there was a lot of go in-betweens and you guys said, well, we'll wait for this response. Let me know what you think about this. He could have just as easily been hired. He put on a desk and read newspapers until they figure out what they're doing and get them on payroll. Or even find a job for him within the prompt time from August 20. It seemed to me that this got dragged out, both because of his position and because of your position, but I think Congress intended this to be fairly prompt. I think I agree with you in principle, not in the particulars, but in principle about everything except what you said right at the end, which is that they could have just put him in a job to read newspapers until they found another position. That is not how USERRA works. So as this court has held twice, section 43.12 and 43.13. I know. It has those three categories. First, upgrading, then the prior job. Exactly. But then three says if he has a disability to accommodate him. Right. But the accommodation took a long time. Right. And I'll get there in one second. The one point I want to make clear is that there is no provision for hiring into one position or no position and then transferring later. That's overaggressive. If I were the company, I would have done that, but quite apart from it, it seems to me by September 4, September 5, when two weeks have passed, somebody could have figured out we have this job that you ultimately offered him on October 22. So let me get to your question, since you wanted to answer, but then let me return to the district court's position. So as to your question, the statute says that promptness is a question depending on the circumstances, and in the ordinary course, it's two weeks. So here's what happened here. October 20, the company finds out about General Harwood's AFIB, and he tells them that he might not be able to get a medical license for a few weeks. He might not be able to show up at training on September 3 or 5 or something like that. So there's a back and forth on September 1. He says, I would like to be reemployed today in the position of pilot, and the company responds and says, that's fine. If you have a first-class medical, no problem. Let's go for it. He says, I don't. Why are you imposing a new condition on me? That's an email exchange on September 1. Three days later, the company responds, and it says, we agree. It seems like you are subject to reemployment under Section 43.12. But the question is really 43.13.A.3. You can't fly without a first-class medical license because of your disability. And so either let's work together to see if we can accommodate your disability, for example, by letting you extend your leave to see if you can fix the problem, or we'll work together to come up with another position. But the end of the email was, let's have a call or a meeting to discuss our options. And it was radio silence for almost a month. Now, there's a well-accepted principle under anti-discrimination law that when it comes to accommodations and things like that. If I'm sitting in American Airlines, why say let's discuss it? You say, we are prepared to offer you a job that is of equal grade status and benefits and so forth. Boom, this is it. Now, he can say, I don't want it, or I think I would want something else, but you guys sort of just laid back. Well, I disagree with that. You said it was a month of silence. What are you doing? So I disagree with – well, there wasn't a month of – there was a month of silence, but it was a month of silence on their part. Yeah. Right? So – But as a general, does that relieve you of your responsibilities? Well, our responsibility was to work with the – I didn't say work with them. I said accommodate them. Your Honor, that's – in the Federal Register, with respect to you, Sarah, and as a general matter of employment law, I'm reading from 70 Federal Register 75277. It is customary to assume that an employee seeking reemployment will cooperate with the employer's reasonable efforts to accommodate a disabled employee. This Court decided the same thing in Cradle. Well, let me ask you, if he doesn't cooperate, does that relieve the airlines of its responsibilities? No, no. The airline has – but all we're talking about is promptness right now, right? So the airline has a responsibility of reemploying under 4312. It does not have the responsibility of reemploying immediately to no particular position, which is why the District Court, as a legal matter, is wrong and must be reversed on that point. I agree with you that the question is whether reemployment in this case was prompt. And all I'm saying is when you're looking at the – when you're taking into account all the circumstances, one circumstance you should look at is whether – how General Harwood responded to Americans' overtures. So on October 1st, he responded, here are the four positions that I would be interested in if I can't get a first-class medical. And then three weeks later, American came up with a brand-new position from scratch to satisfy his request. So it seems to us that that is prompt as a matter of law. But if you disagree with that, then you have to reverse the District Court's decision that American violated the statute by not reemploying General Harwood to no position at all on the first day, and then figure out the right position later and remand to determine, you know, what would have been prompt in the circumstances. And then, you know, the remaining time between that date and October 22nd, what the right damages remedy is. You knew August 20. You had a 43-13-3 prompt. We might have a 43-13-3. Well, you knew he had AFib, and he couldn't fly for that. We knew – he told us he had AFib, and he said, I might not be able – I don't remember if he said might or won't be able to get for at least a few weeks. You assumed he could not be a pilot at that point. Yes, if he did not have a first – There's no evidence that on August 21 or August 22 or August 23 you did any of those things. Well, no, because he was saying, I want to return as a pilot. And we responded – we responded three days after he was supposed to return that let's work together and see how we can accommodate this problem. And he didn't respond. And all I'm saying is when you're determining promptness, you should take that into account because, again, there's a general principle both under USERRA and anti-discrimination laws. Well, it seems to me your arguments really go to damages as opposed to whether there's a violation because this is not a provision that says – You guys were prepared to do that. Yes. And ultimately he's there. He's now flying, which is a happy ending. Yes. But the question is what happened in that two-and-a-half-month interval. Thank you. And he did lose some money and some of it was probably due to you and some of it was probably due to him. Well – I mean, he spent some time, I guess, hiring counsel and getting into a situation where – Right. So, I mean, I essentially agree with that, but I want to emphasize that that is not what the district court held. The district court held that American was liable on day one because it failed to employ him immediately because it believed that 4312 requires immediate employment before a position is identified and – or created in this case or whatever the case may be. That's incorrect. The question is – I agree with you. The question is whether reemployment was prompt. Our position is that it was, but, you know, if the court disagrees with that, then the question would be remanded to the district court to determine promptness. But all of your initial offers were for military – were to extend military leave, service, right? That was one – the first initial offer was – That would give him nothing on the payroll. You say he says – you say he says, I want to be reemployed. How? Yeah. Where is that in the record? Because I thought he just said he wants to be reemployed. Oh, no. He definitely said he wanted to be reemployed as a pilot, and the whole objection here is that we didn't reemploy him as a pilot. I mean, that's his entire claim here. What we said in the September 4th letter is, first, one way we can do this is extend your military leave so you can figure out, and we can help you if we can, get your waiver. Then the letter says, if there's nothing we can do to reasonably accommodate you so that you can return to flying status, then we can explore other paths. Please let me know when you can – when you can have a meeting or a call to discuss our options. And then there was no response for a month. And so I think the main point here is that the district court was wrong to hold that 43-12 requires immediate reemployment to no particular position. The statute requires prompt reemployment to the 43-1A3 position. And that's crucial under the statute because the statute does not require ever employing a returning service member into a position for which he's not qualified. What is the impact of the language under the CFR that he must be employed – that must be made at no cost to the employee? Must be made at no – That the employer's reasonable efforts to accommodate must be made at no cost to the employee. Oh, yeah, we agree. You can't charge the employer – the employee to help you accommodate the disability, but the – So how does he – go ahead, Judge. I'm sorry. Go ahead, please. He thought he was entitled to be reemployed even if to no position so he could access his sibling. That was his position, exactly, and that's – And that would be at no cost to him. Well, no, but the statute is extremely clear, and I can't emphasize this enough, that an employee or returning service member cannot be rehired to a position for which he is not qualified. That's under every section, every section of 431A3. Qualified is a defined term. Congress specifically defined qualified in 4309 to mean having the ability to perform the essential tasks of the position. So does your argument turn on the fact that you maintain that on September 1, he just insisted he was going to be returned as an out? Yes. He did not at any time simply indicated that he wanted to be reemployed. He definitely wanted to be returned as a pilot and then use his sick leave. That was his position. The record shows otherwise, that he says, I just want to be reemployed, generally, as opposed to insisting. In other words, what you're saying is that he made it clear he wasn't coming back unless you could put him back in a position as an out. That's what you're saying on September 1? On September 1, yeah, he has to be put back as a pilot, I think the important legal point here, as I was saying, is that the statute does not allow for reemployment into a position for which the employee is not qualified. And the reason that's so is crucial. First of all, the statute balances the interests of employers and employees, obviously, but also just from the perspective of fairness. 4312 and 4313 only apply at the point of reemployment. And the only thing that protects employees after they're reemployed is 4311, which is the anti-discrimination provision, and 4316C, which is the provision against termination without cause. But if an employee is hired into a position for which he's not qualified, that is, for which he doesn't have the ability to perform the essential tasks, those provisions after rehiring wouldn't apply. Because if the employee can't do the job, it's not discrimination to terminate him. And if he can't do the job, it's not termination without cause, which means the statute only works if the employee is rehired into a position for which he can perform the essential tasks. Now, I have a – we can talk about it in my rebuttal whether the October 22nd position, the fact that General Harwood didn't accept it, was a failure to mitigate damages, because it seems to me it obviously was. And so at the very least, damages should be cut off there, and the 4311 claim, which I think the district court was right about and is also factually barred. All right. Thank you. Mr. Carter. Two more, please. Thank you. Just factually, and it's – Mr. Metlinsky wasn't trial counsel, but – trial-level counsel, but factually, Your Honor, to your point, the Congress – American Airlines made its position very, very clear prior to September 1st. We will never re-employ you without a first-class medical. And let me just say a few things about qualifications. A pilot at American Airlines or any other airlines coming back from military duty is not qualified to get in an airplane and start flying that airplane day one. They're not. They need landing currency, they need check rides, they need all this other stuff. And so the fact that he didn't have a first-class medical from the FAA was only one of many things that made him unqualified. So if we're going to take the position that he's unqualified, forgive me, but every police officer, every fireman, every pilot, everybody in this country is going to come back from military leave unqualified. Did he make it clear on September 1 that he would only come back as a pilot? No, sir. He wanted to be re-employed. He knows you, Sarah, very well, and he said, I want to be re-employed. And the evidence in the record is prior to the flight director, Jerry Shaw, Jerry Shaw said, well, what would you do? And he said, oh, I don't know, but why don't you just treat me like every other pilot? Treat me like every other pilot. That's all he said. So he didn't insist on it, but to your Honor's point about reading the newspaper, that's exactly what happened on January 26th. Let's look to see what happened then. He gets the job, he gets re-employed, and guess what? He's been flying for three weeks. He's at home waiting training. But he's on the payroll, he's got medical benefits, and that's the point. And because it's winter, I can't help myself, but, you know, what's the issue here? The issue is do we keep the veteran out in the cold, unemployed, or do we bring them in to the employer, bring them out of the cold, make them not unemployed, bring them in, and then work with them? Let's ask the question, what exactly did American Airlines do to help General Harwood get qualified? Did they help him with medical? No. Did they put him back on his medical leave? No. He had to go all around, pay for doctors? I'm not sure they should have done that. I think that your best argument is that when he comes back, he's entitled to a job on September 1st without loss, and that the American Airlines should, if he insists on being a pilot, they say, you can't fly, and we can even call you pilot, but we're going to put you somewhere else, do something. Training. Yeah. Whatever. But I think that's your best argument on this, and I think American Airlines did genuinely want to find a position, but some of the correspondence really was prompted by Mr. Harwood's insistence on being a pilot as opposed to some other position. But he wasn't insistent. The airlines, I'm not sure, can duck behind that. But, Your Honor, he wasn't that insistent, and the state of the record. Well, he was pretty insistent. He said, I want to be a pilot and be put on medical leave. Well, okay. And I'm not sure medical leave is an answer to somebody who's got AFib. That was an idea, Your Honor, if I may. The record is that was an idea. Here's the thing. When you're looking at the Butts decision, it's ironic that the employer here is taking the position of Ms. Butts, that she was lacking qualification, and my client is taking the position of the employer in Butts, that the first thing to do is to identify the escalator position. That's the one thing that American did right here. They identified the 737 captain in LaGuardia, escalator position. Now, you come back, you have to train for that. You don't need an FAA to train. You don't need an FAA until you have to do the checkride. That's months down the road. Yeah, but if a guy has AFib, it's a heart condition. Yes, sir. And if somebody has AFib, it seems pretty strange that you would train them to be a pilot until he can qualify. A lot of pilots… I would give them another job. I think that's the better argument. But, Your Honor, a lot of pilots deal with AFib. It's dealt with medication. It's very common. And, if I may, Your Honor, we didn't know as of August 20 whether he would ultimately get it or not. But let's assume… Well, no, I agree with you, but he would need a waiver. Yes, eventually. The FAA is just not going to let pilots fly who have that potential. Agreed, agreed, and eventually he would have. But let's assume something else. Let's assume he needed a medical operation or something. Who pays for that? Can American shun its duties? What did American do to help? And, by the way, American is a huge airline. It has a lot of sway with the FAA. They can help… That doesn't mean anything. We can't… I'm just making a point that the veteran out in the cold has a whole lot less resources at their disposal to get what is needed. It says in the statute and in the regs that American will help him become qualified. My argument in the brief, I said, let's assume it's a truck driver. He doesn't have a CDL. He comes back from war. He doesn't have a leg, and the leg is on the accelerator. Now the guy needs a new license. He needs to figure out how to drive a truck without a leg. What does the employer do? Keep him out in the cold until he learns how to drive with one leg? No. The employer brings him in, brings him on board, brings him under medical, and teaches him how to drive a truck with one leg. And my argument is very, very simple. The employer here did nothing. It did nothing to help him. As to the radio silence, I can say, and I think Your Honor picked up on it, at that point they had made their position abundantly clear. And on October 1, when the two men spoke, Mr. Hansen put in his affidavit saying I would work with him on October 1. Hansen and Hart would talk. And, again, nothing until the October 22. And at that point there was this idea that he was not going to be getting any back pay. He was not knowing whether he was, if he takes this position in Dallas, which doesn't have specified pay or anything, what is he going to be giving up? Is he giving up his right to be a pilot? That was unclear. It was so vague and unspecified that it wasn't a real offer. So if I may sum up, the essence of this case is that the district court got it right as to 43-12, as to the merits of it, and the case should be remanded for a recalculation of the damages liquidated and the 43-11 claim. Thank you. Thank you. I think, Mr. Matlitsky, you have some rebuttal time authorized under the procedure. We have cross appeals. Yes, indeed. Thank you. So just a few factual points to start. First of all, my friend said American said they would never re-employ him. That's obviously not true. They wouldn't re-employ him on day one. If he has first-class medical, then on September 4th they explained that let's work together, let's have a meeting. If that doesn't work out, and at the end of the day they created a brand new position for him based on his own requests. I think the most important legal point here is, again, American is no employer. The statute does not provide for rehiring into a position for which the employee is not qualified. As you said, Judge Niemeyer, taking sick leave does not qualify somebody to fly, and Congress thought this qualification point was so important that it defined the term qualified to mean having the ability to perform the essential tasks of the position, not being able to fly means that somebody is not qualified to be a pilot. So at that point the question is, American gave him an offer on October 22nd. The question is whether that was prompt. There was no per se violation of the statute by not providing a job on September 1st and then figuring out later, which is what the district court held. So, again, we think the offer here was prompt. If you disagree, you can remand for that question. But the district court's decision should be reversed. And it's created by distinct arguments between the parties. The district court thought 4312 created basically an independent right to rehire upon return. Right. And then 13, it said that the question is to what position, which is an escalator position, the formal position, or accommodation position. Right. And if it's correct in its reading, then its view would be that he's entitled to income beginning September 1. Right. And either at one of those three positions. Right. You could conclude that the accommodation would still be on the company time, not on his time. So it gets a little dicey as to how you read those things. I think it's pretty clear, Your Honor. It is? Yes. I think on that point it's very clear. Well, tell me. I'll walk you right through it. How are 12 and 13 related? Okay. So 12 says that if the preconditions are satisfied. Everybody agrees that they're satisfied here for reemployment. So it's true that American had to reemploy General Harwood. Then he, quote, shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter. Now, everybody agrees this court has held that those benefits. I assume it's on September 1, right? What's that? Wouldn't that language alone presume that that all would be operative on September 1? No, but then you have to look at what the reemployment rights and benefits of this chapter are. And those are of this chapter, not this section, this chapter. And the reemployment rights and benefits of this chapter are under 43.13. And that says that the employee shall be reemployed promptly, promptly reemployed in a position of employment in accordance with the following order of priority. And each of the orders of priority, and especially 43.13a.3, make clear that the employee has to be qualified for the position. And so the employer has to find a position for which the employee is qualified promptly, not do what the district court said, which is on the first day rehire the employee and then figure out what the position is. That position conflicts with this court's decision. Well, if you're right about that, then you'd be arguing about the reduction of the judgment for a few weeks. The court clearly would have imposed on you a quicker responsibility to accommodate him, I would agree. Well, we disagree with that, but yes, that's what we're fighting about. And that would be, what, two or three weeks of pay? Well, I suppose, well, no, the principle of – He gave you pay from September 1. And if you were to win on your position, the court would relook at he might give you from September 20. Well, two very important legal principles, though, that I think the district court violated. First of all, just the principle of the requirement of immediate employment into no position is just wrong and a very big deal apart from this case. But second, the district court extended damages through January 26 and didn't require damages to be cut off or didn't cut off damages on October 22, which we think is a grave error because mitigation, everybody agrees mitigation is required, and the October 22 offer was obviously a satisfied use error because General Harwood accepted the offer later, and in his complaint itself, he says he accepted the same job in order to mitigate his damages. That's paragraph 59 of his complaint. So the damages should have been cut off at October 22. If the court has any questions on 4311, happy to answer them. Anything further? Anything further? We'll come to adjourn court, sign a die, and then come down and do counsel. This honorable court stands adjourned, sign a die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James A. Wynn Jr., Henry F. Floyd